1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES  DISTRICT COURT

Northern District of California

San Francisco

| | |
|---|---|
| ANDREA CHANCELLOR, | No. C 12-01068 LB |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| ONEWEST BANK, *et al.,* | [ECF No. 12] |
| Defendants. | |
| _____/ | |

## I.  INTRODUCTION

Plaintiff Andrea Chancellor brought this action against OneWest Bank ("OneWest") and Cal-Western Reconveyance Corporation ("Cal-Western") (collectively, "Defendants") stemming from OneWest's failure to permanently modify her mortgage loan and Cal-Western's initiation of foreclosure proceedings.  OneWest now has moved to dismiss Ms. Chancellor's First Amended Complaint.  Upon consideration of the papers submitted and applicable legal authorities, the court GRANTS IN PART and DENIES IN PART OneWest's motion.[1]

## II.  BACKGROUND

Ms. Chancellor purchased a condominium at 930 Blosson Way in Hayward, California in 1993.

---

[1] Pursuant to Civil Local Rule 7-1(b), the court finds this matter suitable for determination without oral argument and vacates the May 24, 2012 hearing.

First Amended Complaint ("FAC"), ECF No. 11 at 5, ¶ 13.[2] Many years later, in February 2007, she obtained from IndyMac Bank an adjustable rate mortgage that is secured by a first deed of trust in the amount of $400,000 and a second deed of trust in the amount of $50,000 for her condominium. *Id.* at 6, ¶ 14, Ex. A. In March 2009, OneWest acquired IndyMac's loans and servicing rights. *See* Failed Bank Information, Information for IndyMac Bank, F.S.B., and IndyMac Federal Bank, F.S.B., Pasadena, CA, http://www.fdic.gov/bank/individual/failed/IndyMac.html (last visited May 22, 2012).

By April 2009, Ms. Chancellor was having difficulty staying current on her loan payments, so she sought either a special forbearance agreement or a loan modification from OneWest. FAC, ECF No. 11 at 8, ¶ 23. Eventually, in October 2009, OneWest offered her a temporary loan modification through a Trial Period Plan ("TPP") under the Home Affordable Modification Program ("HAMP") (the "HAMP TPP"). *Id.* at 8, ¶ 24, Ex. B at 61-62. Ms. Chancellor signed and executed the HAMP TPP on October 9, 2009. *Id.* at 8, ¶ 24, Ex. B at 62. Under the its terms, Ms. Chancellor was to make three monthly payments of $1,159.15 on or before November 1, 2009, December 1, 2009, and January 1, 2010. *Id.* at 8, ¶ 24, Ex. B. at 61. The HAMP TPP also provides:

> Except as set forth in Section 2.C. below [which is applicable only to property located in Georgia, Hawaii, Missouri, or Virginia], the Lender [OneWest] will suspend any scheduled foreclosure sale, provided I [Ms. Chancellor] continue to meet the obligations under this Plan [the HAMP TPP], but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary to continue the foreclosure action. . . .

*Id.*, Ex. B at 61.

Ms. Chancellor made the first payment by November 1, 2009. *Id.* at 18, ¶ 89. Nevertheless, on November 4, 2009, OneWest, through its trustee Cal-Western, recorded a Notice of Default with respect to Ms. Chancellor's property. *Id.* at 9, ¶ 26. The Notice of Default stated that she was $15,296 in default on her loan. *Id.* Ms. Chancellor contends that the filing of the Notice of Default (and, thus, the institution of foreclosure proceedings) violated both the HAMP TPP and oral

---

[2] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

1   promises made by OneWest's representatives, whom she alleges told her that Defendants would not

2   initiate any foreclosure proceedings unless she failed to comply with the terms of the HAMP TPP.

3   *Id*. at 9, ¶ 27.  Ms. Chancellor alleges that she not only made the three payments by November 1,

4   2009, December 1, 2009, and January 1, 2010, but also made seven additional payments through

5   September 2010.  *Id*.  OneWest accepted all of these payments and applied them to the balance of

6   her loan but never approved Ms. Chancellor for a permanent loan modification.  *Id*.

7        On January 28, 2010, "in fear that ONEWEST would proceed with a foreclosure sale," Ms.

8   Chancellor filed a Chapter 13 bankruptcy petition (the "First Bankruptcy Case") in this district.  *Id*.

9   at 9, ¶ 28; *see In re Chancellor*, No. 10-bk-40906 EDJ 13 (Bankr. N.D. Cal. Jan. 28, 2010).

10       Notwithstanding its acceptance of Ms. Chancellor's monthly payments, OneWest, through Cal-

11  Western, recorded a Notice of Trustee's Sale on February 5, 2010.  FAC, ECF No. 11 at 9-10, ¶ 29.

12  Because the Notice of Trustee's Sale was recorded in violation of the automatic stay due to the First

13  Bankruptcy Case, OneWest rescinded it.  *Id*. at 9-10, ¶ 29.

14       On March 17, 2010, the bankruptcy court dismissed the First Bankruptcy Case because Ms.

15  Chancellor failed to file certain required documents.  Order of Dismissal, ECF No. 27, *In re*

16  *Chancellor*, No. 10-bk-40906 EDJ 13 (Bankr. N.D. Cal. Mar. 17, 2010); Order Denying Motion to

17  Vacate Dismissal and Reopen Case, ECF No. 34, *In re Chancellor*, No. 10-bk-40906 EDJ 13

18  (Bankr. N.D. Cal. July 8, 2010).  On March 25, 2010, Ms. Chancellor filed another Chapter 13

19  bankruptcy petition (the "Second Bankruptcy Case"), which was later converted to a Chapter 7

20  bankruptcy petition.  *Id*. at 10, ¶ 31; *see In re Chancellor*, No. 10-bk-43311 MEH 7 (Bankr. N.D.

21  Cal. Mar. 2, 2010).  On September 29, 2010. OneWest obtained relief from the automatic stay put in

22  place by the Second Bankruptcy Case.  *Id*. at 10, ¶ 31; Order Terminating Automatic Stay, ECF No.

23  32, *In re Chancellor*, No. 10-bk-43311 MEH 7 (Bankr. N.D. Cal. Sep. 29, 2010).

24       Around this time, Ms. Chancellor alleges that she "was orally informed that she did not qualify

25  for a permanent loan modification" and "was told by ONEWEST that she could not longer continue

26  making the monthly payments she had made in good faith for the last ten (10) months."  FAC, ECF

27  No. 11 at 10, ¶ 32.  She further alleges that "ONEWEST did not give a reason for the denial"; rather,

28  a "representative from ONEWEST merely stated that they recommended that she 'save her money.'"

UNITED STATES DISTRICT COURT
For the Northern District of California

1   *Id.* "Although [she] was ready and willing to make additional payments, she stopped making

2   payments as instructed." *Id.* OneWest, through Cal-Western, recorded another Notice of Trustee's

3   Sale on November 10, 2011, and Ms. Chancellor alleges that it may have filed two more since then.

4   *Id.* at 10, ¶ 35.

5       Plaintiff filed a third Chapter 13 bankruptcy petition (the "Third Bankruptcy Case" on January

6   31, 2011. *In re Chancellor*, No. 11-bk-41061 EDJ 13 (Bankr. N.D. Cal. Jan. 31, 2011). Because the

7   Second Bankruptcy Case was (and is) open and pending, the bankruptcy court dismissed the third

8   one on February 10, 2011. Order of Dismissal, ECF No. 11, *In re Chancellor*, No. 11-bk-41061

9   EDJ 13 (Bankr. N.D. Cal. Feb. 10, 2011).

10      Plaintiff filed the instant civil action on January 5, 2012 in Alameda County Superior Court.

11  Notice of Removal, ECF No. 1, Ex. 1; *see Chancellor v. OneWest Bank*, No. HG12610995 (Jan. 5,

12  2012). Both OneWest and Cal-Western was served with the complaint and summons. Proof of

13  Service (Onewest), No. HG12610995 (Feb. 3, 2012); Proof of Service (Cal-Western), No.

14  HG12610995 (Feb. 3, 2012). Cal-Western responded on February 16, 2012 by filing a declaration

15  of non-monetary status pursuant to California Civil Code § 2924(b), so it is no longer considered a

16  party to this action. Declaration Non-Monetary, No. HG12610995 (Feb. 22, 2012).[3]

17      OneWest did not answer the complaint. Instead, on March 2, 2012, OneWest removed the action

18  to this court on federal question grounds. *Id.* at 2, ¶¶ 3-5. Then, on March 9, 2012, OneWest moved

19  _____

20      [3] Pursuant to California Civil Code § 2924l, a trustee may file a declaration of non-monetary

21  status in the event that it is named in an action in which that deed of trust is the subject, and in the
    event that the trustee maintains a reasonable belief that it has been named in the action solely in its

22  capacity as trustee, and not arising out of any wrongful acts or omissions on its part in the
    performance of its duties. Cal. Civ. Code § 2924a. In the event that no objection is served within 15

23  days plus 5 days from the date of service, the trustee shall not be required to participate in the action
    and shall not be subject to any damages. *Id.* at § 2924b, d. In cases where the trustee filed a

24  declaration in non-monetary status prior to an action being removed to federal court, courts in this

25  district have found the declaration to be operative and considered the trustee not to be a party to the
    litigation. *See Tabula v. Washington Mutual Bank*, No. C10-05819 HRL, 2011 WL 1302800, at *1,

26  n.1 (N.D. Cal. Feb. 28, 2011); *Cabriales v. Aurora Loan Servs.*, No. C 10-161 MEJ, 2010 WL
    761081, at * 1, n.1 (N.D. Cal. Mar. 2, 2010); *but c.f. Kennedy v. PLM Lender Servs., Inc.*, No. C 10-

27  04942 WHA, 2012 WL 1038632, at *5-7 (N.D. Cal. Mar. 27, 2012) (concluding in an action that

28  was initially filed in federal court that § 2924l declarations are not recognized in federal court under
    the *Erie* doctrine).

1    to dismiss Plaintiff's complaint.  First Motion, ECF No. 4.  In response, Ms. Chancellor filed a First

2    Amended Complaint on March 23, 2010, in accordance with Federal Rule of Civil Procedure

3    15(a)(1)(B).  FAC, ECF No. 11.  The First Amended Complaint contains claims for the following:

4    (1) wrongful foreclosure in violation of California Civil Code § 2923.5; (2) violation of California

5    Civil Code § 2923.6; (3) breach of contract; (4) violation of the Real Estate Settlement Procedures

6    Act ("RESPA"), 12 U.S.C. § 2605; (5) breach of the covenant of good faith and fair dealing; (6)

7    violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; (7)

8    violation of the "Unfair and Deceptive Business Act Practices (UDAP)"; (8) negligence; (9)

9    intentional misrepresentation; (10) negligent misrepresentation; (11) "preliminary and permanent

10    injunction"; and (12) quiet title.  *See generally* FAC, ECF No. 11.

11      OneWest has now moved to dismiss Ms. Chancellor's First Amended Complaint.  Second

12    Motion, ECF No. 12.  Ms. Chancellor opposes the motion, Opposition, ECF No. 15.  OneWest did

13    not file a reply.

14                  **III.  LEGAL STANDARD**

15      A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does

16    not contain enough facts to state a claim to relief that is plausible on its face.  *See Bell Atlantic Corp.*

17    *v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads

18    factual content that allows the court to draw the reasonable inference that the defendant is liable for

19    the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  "The plausibility standard

20    is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

21    defendant has acted unlawfully."  *Id*. (quoting *Twombly*, 550 U.S. at 557.).  "While a complaint

22    attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

23    obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

24    conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual

25    allegations must be enough to raise a right to relief above the speculative level."  *Twombly,* 550 U.S.

26    at 555 (internal citations and parentheticals omitted).

27      In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true

28    and construe them in the light most favorable to the plaintiff.  *See id*. at 550; *Erickson v. Pardus*, 551

**UNITED STATES DISTRICT COURT**
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

2     If the court dismisses the complaint, it should grant leave to amend even if no request to amend

3 is made "unless it determines that the pleading could not possibly be cured by the allegation of other

4 facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc.*

5 *v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).  But when a party

6 repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend.  *See*

7 *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where

8 district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim

9 with leave to amend).

10 <center>**IV.  DISCUSSION**</center>

11 <u>A.  Judicial Estoppel</u>

12     OneWest first argues that the court should reject all of Ms. Chancellor's claims under the

13 doctrine of judicial estoppel.  Second Motion, ECF No. 12 at 17-18.  The Ninth Circuit has

14 previously explained in detail the legal standards to be applied with respect to this doctrine:

15     Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a

16 clearly inconsistent position.  *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600-601 (9th Cir. 1996); *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990).

17 This court invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of "general

18 consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings," and to "protect against a litigant playing fast and loose with the

19 courts." *Russell*, 893 F.2d at 1037.

20     The United States Supreme Court recently listed three factors that courts *may* consider in determining whether to apply the doctrine of judicial estoppel:

21

22     [S]everal factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be

23 "clearly inconsistent" with its earlier position.  *United States v. Hook*, 195 F.3d 299, 306 (C.A.7 1999); *In re Coastal Plains, Inc.*, 179 F.3d

24 197, 206 (C.A.5 1999); *Hossaini v. Western Mo. Medical Center*, 140 F.3d 1140, 1143 (C.A.8 1998); *Maharaj v. Bankamerica Corp.*, 128

25 F.3d 94, 98 (C.A.2 1997).  Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's

26 earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first

27 or the second court was misled," *Edwards*, 690 F.2d at 599.  Absent success in a prior proceeding, a party's later inconsistent position

28 introduces no "risk of inconsistent court determinations," *United States v. C.I.T. Constr. Inc.*, 944 F.2d 253, 259 (C.A.5 1991), and thus no threat to judicial integrity.  *See Hook*, 195 F.3d at 306; *Maharaj*,

128 F.3d at 98; *Konstantinidis*, 626 F.2d at 939. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *See Davis*, 156 U.S. at 689, 15 S.Ct. 555, 39 L.Ed. 578; *Philadelphia, W., & B.R. Co. v. Howard*, 13 How. 307, 335-337, 14 L.Ed. 157 (1851); *Scarano*, 203 F.2d at 513 (judicial estoppel forbids use of "intentional self-contradiction . . . as a means of obtaining unfair advantage"); *see also* 18 Wright § 4477, p. 782. In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts. In this case, we simply observe that the factors above firmly tip the balance of equities in favor of barring New Hampshire's present complaint.

*New Hampshire v. Maine*, 532 U.S. 742, 121 S.Ct. 1808, 1815, 149 L.Ed.2d 968 (2001).

This court has restricted the application of judicial estoppel to cases where the court relied on, or "accepted," the party's previous inconsistent position. *Interstate Fire & Casualty Co. v. Underwriters at Lloyd's, London*, 139 F.3d 1234, 1239 (9th Cir. 1998); *Masayesva v. Hale*, 118 F.3d 1371, 1382 (9th Cir.1997). The application of judicial estoppel is not limited to bar the assertion of inconsistent positions in the same litigation, but is also appropriate to bar litigants from making incompatible statements in two different cases. *Rissetto*, 94 F.3d at 605 ("We now make it explicit that the doctrine of judicial estoppel is not confined to inconsistent positions taken in the same litigation"); *Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.*, 910 F.2d 1540, 1548 (7th Cir. 1990) (estoppel is even more appropriate where the incompatible statements are made in two different cases, since "[i]nconsistent positions in different suits are much harder to justify" than inconsistent pleadings within one suit). In the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements. *Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir. 1992) (failure to give notice of a potential cause of action in bankruptcy schedules and Disclosure Statements estops the debtor from prosecuting that cause of action); *In re Coastal Plains*, 179 F.3d 197, 208 (5th Cir. 1999), cert. denied, 528 U.S. 1117, 120 S.Ct. 936, 145 L.Ed.2d 814 (2000) (holding that a debtor is barred from bringing claims not disclosed in its bankruptcy schedules); *Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 572 (1st Cir.), cert. denied, 510 U.S. 931, 114 S.Ct. 344, 126 L.Ed.2d 309 (1993) (debtor who obtained relief on the representation that no claims existed cannot resurrect such claims and obtain relief on the opposite basis); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3rd Cir.), cert. denied, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988) (debtor's failure to list potential claims against a creditor "worked in opposition to preservation of the integrity of the system which the doctrine of judicial estoppel seeks to protect," and debtor is estopped by reason of such failure to disclose).

*Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782-83 (9th Cir. 2001).

Ms. Chancellor failed to identify her potential causes of action against OneWest in the schedules she was required to file as a part of her bankruptcy cases. Request for Judicial Notice ("RJN"), ECF

No. 13, Exs. B, C, D.[4]  Citing a recent California appellate decision, OneWest argues that Ms.
Chancellor should be judicially estopped from bringing her claims against it now because it was a
creditor in those bankruptcy cases, and she needed to have identified her claims there.  Second
Motion, ECF No. 12 at 17-18 (citing *Hamilton v. Greenwich Inv. XXVI, LLC*, 195 Cal. App. 4th
1602, 1613-14 (2011)).  In that case, *Hamilton v. Greenwich Inv.*, the plaintiff, like Ms. Chancellor,
failed to identify his potential claims against his creditor in the schedules required to be filed in the
plaintiff's bankruptcy case.  *Hamilton v. Greenwich Inv.*, 195 Cal. App. 4th at 1606-07.  The
plaintiff and his creditors (including the defendant, the owner of his mortgage loan) then formulated
a bankruptcy plan, which the bankruptcy court later confirmed.  *Id*. at 1607.  The plaintiff
subsequently sued the defendant in state court for various mortgage-related claims, and the
defendant moved to dismiss the claims on judicial estoppel grounds.  *Id*. at 1607-08. The state trial
court granted the motion, and the appellate court upheld the decision.  *Id*. at 1609.

The state appellate court's reasoning in *Hamilton v. Greenwich Inv.* is sound, and it comports
with the standards for judicial estoppel cited above, but the facts of that case are distinguishable.
Indeed, in its discussion, the appellate took care to distinguish the facts of its case from those in
another one, *Gottlieb v. Kest*, 141 Cal. App. 4th 110 (2006).  *Hamilton v. Greenwich Inv.*, 195 Cal.
App. 4th at 182-83.  In *Gottlieb*, the appellate court writes:

---

[4] OneWest asks the court to take judicial notice of the following documents: (1) a notice of
default that was recorded in the Alameda County Official Records on November 4, 2009; (2)
schedules filed by Ms. Chancellor in the First Bankruptcy Case; (3) schedules filed by Ms.
Chancellor in the Second Bankruptcy Case; (4) schedules filed by Ms. Chancellor in the Third
Bankruptcy Case; (5) the Servicing Business Asset Purchase Agreement by and between the Federal
Deposit Insurance Corporation as Receiver for IndyMac Federal Bank, FSB and OneWest Bank,
FSB dated March 19, 2009; and (6) the Loan Sale Agreement by and between the Federal Deposit
Insurance Corporation as Receiver for IndyMac Federal Bank, FSB and OneWest Bank, FSB dated
March 19, 2009).  RJN, ECF No. 13, Exs. A-F.

The court may take judicial notice of matters of public record.  *Lee v. City of Los Angeles*,
250 F.3d 668, 689 (9th Cir. 2001).  Because Exhibits 3, 9, 10, 11, 12, and 13 are public records, the
court took judicial notice of the undisputable facts contained in them.  *See Hotel Employees & Rest.
Employees Local 2 v. Vista Inn Mgmt. Co.*, 393 F. Supp. 2d 972, 978 (N.D. Cal. 2005); Fed. R. Evid.
201(b); *see also Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 264-67 (2011).  All of
the documents listed above as public records, so the court will take judicial notice of them.

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    the court found judicial estoppel did not bar plaintiff's claims against a real estate
     lender, even though plaintiff did not disclose its claim against the lender in the
2    chapter 11 bankruptcy case, because the debtor 'did not submit a reorganization plan,
     creditors did not accept a plan, and the bankruptcy court did not review or confirm a
3    plan.' Instead, the chapter 11 case 'was dismissed without a determination as to any
     purported debts.' [Citation omitted.] In Gottlieb, the debtor's nondisclosure 'did not
4    affect any unpaid creditor's ability to pursue [the debtor] for the full amount due . . .
     .' [Citation omitted.] In short, Gottlieb does not help plaintiffs here.

5

6    *Hamilton v. Greenwich Inv.*, 195 Cal. App. 4th at 1613. But *Gottlieb* does help Ms. Chancellor.

7    Unlike in *Hamilton v. Greenwich Inv.*, none of the bankruptcy courts presiding over Ms.

8    Chancellor's cases has certified any bankruptcy plans, and OneWest has not alerted the court to any

9    court orders issued in either the First, Second, or Third Bankruptcy Cases that rely upon Ms.

10   Chancellor's submitted schedules. This is crucial because, as noted above, the Ninth Circuit "has

11   restricted the application of judicial estoppel to cases where the court relied on, or 'accepted,' the

12   party's previous inconsistent position." *Hamilton*, 270 F.3d at 783. In such a factual context, the

13   court finds that Ms. Chancellor has not "gain[ed] an advantage by asserting one position, and then

14   later seeking an advantage by taking a clearly inconsistent position," *Hamilton*, 270 F.3d at 782, and

15   that judicial estoppel is not appropriate here.

16   B.  Ms. Chancellor's Sole Federal Claim: RESPA

17        The Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601-17, protects home buyers "from

18   unnecessarily high settlement charges by certain abusive practices." 12 U.S.C. § 2601(a). It

19   provides plaintiffs with a private right of action for three types of wrongful acts: "(1) payment of a

20   kickback and unearned fees for real estate settlement services, 12 U.S.C. § 2607(a), (b); (2)

21   requiring a buyer to use a title insurer selected by a seller, 12 U.S.C. § 2608(b); and (3) the failure

22   by a loan servicer to give proper notice of a transfer of servicing rights or to respond to a qualified

23   written request ["QWR"] for information about a loan, 12 U.S.C. § 2605(f)." *Choudhuri v. Wells

24   Fargo Bank, N.A.,* No. C 11-00518 SBA, 2011 WL 5079480, at *8 (N.D. Cal. Oct. 25, 2011) (citing

25   *Patague v. Wells Fargo Bank, N.A.,* No. C 10-03460 SBA, 2010 WL 4695480, at *3 (N.D. Cal. Nov.

26   8, 2010)).

27        Ms. Chancellor's sole federal claim, and thus the claim upon which this court's jurisdiction is

28   based, alleges the third type. FAC, ECF No. 11 at 20-22, ¶¶ 97-111. She alleges that she sent

UNITED STATES DISTRICT COURT
For the Northern District of California

1   OneWest a QWR and that OneWest never responded to it.  OneWest argues that Ms. Chancellor

2   alleged neither of these things.  Second Motion, ECF No. 12 at 25-26.

3       A QWR is a "a written correspondence, other than notice on a payment coupon or other payment

4   medium supplied by the servicer, that — (i) includes, or otherwise enables the servicer to identify,

5   the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of

6   the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the

7   servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).  If a

8   servicer of a federally-related mortgage loan receives a QWR from the borrower (or an agent of the

9   borrower) for information relating to the servicing of such loan, RESPA requires the servicer: (1)

10  within 20 days (excluding legal public holidays, Saturdays, and Sundays), to  provide the borrower

11  with a written response acknowledging receipt of the correspondence (unless the action requested is

12  taken within such period); and (2) within 60 days (excluding legal public holidays, Saturdays, and

13  Sundays), and, if applicable, before taking any action with respect to the inquiry of the borrower, to:

14      (A) make appropriate corrections in the account of the borrower, including the
        crediting of any late charges or penalties, and transmit to the borrower a written
15      notification of such correction (which shall include the name and telephone number
        of a representative of the servicer who can provide assistance to the borrower);

16      (B) after conducting an investigation, provide the borrower with a written explanation
17      or clarification that includes--(i) to the extent applicable, a statement of the reasons
        for which the servicer believes the account of the borrower is correct as determined
18      by the servicer; and (ii) the name and telephone number of an individual employed
        by, or the office or department of, the servicer who can provide assistance to the
19      borrower; or

20      (C) after conducting an investigation, provide the borrower with a written explanation
        or clarification that includes--(i) information requested by the borrower or an
21      explanation of why the information requested is unavailable or cannot be obtained by
        the servicer; and (ii) the name and telephone number of an individual employed by,
22      or the office or department of, the servicer who can provide assistance to the
        borrower.
23
    12 U.S.C. §§ 2605(e)(1)(A), (e)(2).
24
        OneWest argues that "[t]he form letter that [Ms. Chancellor] refers to as a [QWR] does not
25
    contain a reasonably precise statement of the reasons for the belief that there is an error in the
26
    account and does not represent a good faith use of the statutory procedure to secure information
27
    related to the servicing of the subject loan." Second Motion, ECF No. 12 at 25-26.  The court
28
    disagrees.  Ms. Chancellor's QWR, which is attached to her complaint as Exhibit F, includes her

UNITED STATES DISTRICT COURT
For the Northern District of California

name and account number, lists specific documents that she requests, and states, among other things, that she "suspect[s] violations of RESPA or of TILA in the processing of certain fees associated with [her] Loan and Loan Documentation" and requests "a specific breakdown of all the fees and explanation of why they were incurred." FAC, Ex. F, ECF No. 1 at 82. This is sufficient to meet the definition of a QWR. *See* 12 U.S.C. § 2605(e)(1)(B).

OneWest also argues that, even if Ms. Chancellor did send a QWR, she did not sufficiently allege that she sent it "in accordance with the procedural requirements of RESPA or the terms of the Deed of Trust" or that OneWest "actually received" it. Second Motion, ECF No. 25. Its argument fails. First, OneWest identifies no "procedural requirements of RESPA" that mention the method of delivery for a QWR. Second, OneWest cites the Deed of Trust for the requirement that Ms. Chancellor send a QWR "by delivering it or by mailing it by first class mail to the Lender's address stated herein," but it does not cite any authority or even argue that this language applies to QWRs that are to be sent to loan servicers. Regardless, Ms. Chancellor alleges that she both faxed and mailed (via certified mail) the QWR to OneWest on October 18, 2011. FAC, ECF No. 11 at 20, ¶ 101. At this stage, this is sufficient.

Accordingly, Ms. Chancellor's RESPA claim survives OneWest's motion to dismiss. Thus, the court will address her state claims below.

C. Ms. Chancellor's State Claims

1. Wrongful Foreclosure Based on Violations of California Civil Code §§ 2329.5 and 2329.6

In her first and second causes of action, Ms. Chancellor alleges two claims against OneWest for wrongful foreclosure: one based on OneWest's violation of California Civil Code § 2923.5 and one based on its violation of California Civil Code § 2923.6. FAC, ECF No. 11 at 12-17, ¶¶ 46-83. "A lender or foreclosure trustee may be liable to the mortgagor or trustor for wrongful foreclosure only if the property was fraudulently or illegally sold under a power of sale contained in a mortgage or deed of trust." *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 961 (N.D. Cal., Aug. 9, 2010) (James, J.) (finding wrongful foreclosure claim as premature where it was undisputed that no foreclosure sale had taken place) (citing *Munger v. Moore*, 11 Cal. App. 3d 1, 7 (1970)); *see Permito v. Wells Fargo Bank, N.A.*, 2012 WL 1380322, at *3 N.D. Cal. Ap. 20, 2012) ("The first

1  element for a wrongful foreclosure claim is that the property was illegally or fraudulently sold under

2  a power of sale in a deed of trust.") (citing *Rosenfeld*, 732 F. Supp. 2d at 961).

3      Here, Ms. Chancellor does not allege that a foreclosure sale has occurred.  Instead, she alleges

4  that a foreclosure sale is scheduled.  FAC, ECF No. 11 at 11, ¶ 36; *see* Opposition, ECF No. 15 at

5  21.  For this reason, her claim for wrongful foreclosure based on OneWest's violation of California

6  Civil Code § 2329.5 is premature and must be dismissed without prejudice at this time.

7      Ms. Chancellor's claim for wrongful foreclosure based on OneWest's violation of § 2329.6 is

8  different.  Section 2329.6 provides:

9          (a) The legislature finds and declares that any duty servicers may have to maximize
           net present value under their pooling and servicing agreement is owed to all parties in
10         a loan pool, not to any particular parties, and that a servicer acts in the best interests
           of all parties if it agrees to or implements a loan modification or workout plan for
11         which both of the following apply:

12             (1) The loan is in payment default, or payment default is reasonably
               foreseeable.
13
               (2) Anticipated recovery under the loan modification or workout plan exceeds
14             the anticipated recovery through foreclosure on a net present value basis.

15         (b) It is the intent of the Legislature that the mortgagee, beneficiary, or authorized
           agent offer the borrower a loan modification or workout plan if such a modification is
16         consistent with its contractual or other authority.

17

18  Cal. Civ. Code § 2923.6.  Clearly, the text of § 2923.6 does not affirmatively provide Ms.

19  Chancellor with a private right of action.  And "[a]lthough our court of appeals has not yet weighed

20  in on this issue, district courts in this circuit have found 'that the legislative history, intent, and plain

21  language of [Section] 2923.6 makes it clear that servicers are not obligated to offer loan

22  modifications to borrowers,' and it does not provide a private claim for relief to borrowers."  *Perez*

23  *v. American Home Mortg. Servicing, Inc.*, No. C 12–00932 WHA, 2012 WL 1413300, at *2 (N.D.

24  Cal. Apr. 23, 2012) (quoting *Dizon v. Cal. Empire Bancorp, Inc.*, No. CV 09-5826 CAS (AGRx),

25  2009 WL 3770695, at *5 (C.D. Cal. Nov. 9, 2009)); *see, e.g.*, *Gutierrez v. PNC Mortg.*, 2012 WL

26  1033063, at *10 (S.D. Cal. Mar. 26, 2012); *Bulaoro v. Oro Real, Inc.*, No. C 11–03059 WHA, 2011

27  WL 6372458, at *9 (N.D. Cal. Dec. 20, 2011); *Gomez v. Wells Fargo Home Mortg.*, No. C

28  11–01725 LB, 2011 WL 5834949, at *12 (N.D. Cal. Nov. 21, 2011); *Reynoso v. Chase Home*

UNITED STATES DISTRICT COURT
For the Northern District of California

1   *Finance*, No. C09–02190 MEJ, 2009 WL 5069140, at *4–5 (N.D. Cal. Dec. 17, 2009); *Farner v.*

2   *Countrywide Home Loans*, No. 08CV2193 BTM AJB, 2009 WL 189025, at *2 (S.D. Cal. Jan. 26,

3   2009).  Ms. Chancellor's argument in favor of an implied private right of action is not persuasive.

4   See Opposition, ECF No. 15 at 12-13.  Because § 2923.6 does not provide a private claim, Ms.

5   Chancellor's claim under this section necessarily fails and must be dismissed with prejudice.

6        2.  Breach of Contract

7        In her third cause of action, Ms. Chancellor brings a claim against Defendants for breach of

8   contract.  FAC, ECF No. 11 at 17-19, ¶¶ 84-96.  OneWest argues that she did not sufficiently allege

9   the existence of a contract.  Second Motion, ECF No. 12 at 21-24.

10       To state a claim for breach of contract, a plaintiff must show the following: (1) a contract

11  existed; (2) the plaintiff performed his duties or was excused from performing his duties under the

12  contract; (3) the defendant breached the contract; and (4) the plaintiff suffered damages as a result of

13  that breach.  *See First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001).

14  "Facts alleging a breach, like all essential elements of a breach of contract cause of action, must be

15  pleaded with specificity."  *See Levy v. State Farm Mut. Auto. Ins. Co.*, 150 Cal. App. 4th 1, 5 (2007).

16       "Resolution of contractual claims on a motion to dismiss is proper if the terms of the contract are

17  unambiguous."  *Monaco v. Bear Stearns Residential Mortg. Corp.*, 554 F. Supp. 2d 1034, 1040 (C.D.

18  Cal. 2008) (citing *Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir. 2000); *Westlands*

19  *Water Dist. v. U.S. Dep't of Interior*, 850 F. Supp. 1388, 1408 (E.D. Cal. 1994)).  "A contract

20  provision will be considered ambiguous when it is capable of two or more reasonable

21  interpretations."  *Id.* (citing *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th

22  854, 867 (1993)).  "An ambiguity may appear on the face of an agreement or extrinsic evidence may

23  reveal a latent ambiguity."  *Fremont Indem. Co. v. Fremont Gen. Corp.*, 148 Cal. App. 4th 97, 114

24  (2007) (citation omitted).

25       Here, Ms. Chancellor bases her claim on three contracts.  The first contract is an oral one.  Ms.

26  Chancellor alleges that she and OneWest entered into an oral contract whereby OneWest, "through

27  its agents and representatives[,] reiterated and assured [her] that they would not proceed with a

28  foreclosure of [her] property while they were reviewing any proposed loan modification agreement

of the first trust deed issued pursuant to HAMP or any other workout option."  FAC, ECF No. 11 at 18, ¶¶ 85-86.  She alleges that "Defendants" breached this oral contract when OneWest instructed Cal-Western "to proceed with the foreclosure sale."  *Id.*

Although OneWest did not make any specific arguments with respect to this oral contract, the court does not believe Ms. Chancellor has sufficiently alleged its existence.  For one, Ms. Chancellor does not allege any facts to suggest that the oral contract is supported by consideration.  Under California law, "good consideration" to support a contract is:

> Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise.

Cal. Civ. Code § 1605.  "Generally speaking, a commitment to perform a preexisting contractual obligation has no value.  In contractual parlance, for example, doing or promising to do something one is already legally bound to do cannot constitute the consideration needed to support a binding contract."  *Auerbach v. Great W. Bank*, 74 Cal. App. 4th, 1172, 1185 (1999) (citations omitted).  On the other hand, "[u]nder California law, consideration exists even if the performance due 'consists almost wholly of a performance that is already required and that this performance is the main object of the promisor's desire.  It is enough that some small additional performance is bargained for and given. . . .  [It is sufficient] if the act or forebearance given or promised as consideration differs in any way from what was previously due.'"  *Ansanelli v. JP Morgan Chase Bank, N.A.*, No. C 10–03892 WHA, 2011 WL 1134451, at *4 (quoting *House v. Lala*, 214 Cal. App. 2d 238, 243 (1963)) (finding that consideration existed where plaintiffs expended time and energy and made financial disclosures in furtherance of the TPP agreement, which they would not have been required to do under the original contract).  *See Wigod v. Wells Fargo Bank*, 637 F.3d 547, 564 (7th Cir. 2012) (TPP at issue in that case was supported by consideration because the borrower agreed to "open new escrow accounts, to undergo credit counseling (if asked), and to provide and vouch for the truth of her financial information"); *Lucia v. Wells Fargo Bank, N.A.*, 798 F. Supp. 2d 1059, 1067 (N.D. Cal. 2011) ("additional consideration suffered was the credit consequences of [plaintiffs'] partial mortgage payments and fulfilling the burdensome documentation requirements of

UNITED STATES DISTRICT COURT
For the Northern District of California

1  the loan modification approval process"). While Ms. Chancellor alleges that OneWest promised that

2  it "would not proceed with a foreclosure of [her] property while they were reviewing any proposed

3  loan modification agreement," she does not allege what she was supposed to do or give in return. To

4  the extent that Ms. Chancellor's breach of contract claim is based on the oral contract, it is dismissed

5  without prejudice.

6      The second contract is the HAMP TPP into which Ms. Chancellor and OneWest entered on

7  October 2009. FAC, ECF No. 11 at 18, ¶¶ 87-89. As described above, under the terms of the

8  HAMP TPP, Ms. Chancellor was to make three monthly payments of $1,159.15 on or before

9  November 1, 2009, December 1, 2009, and January 1, 2010. *Id.* at 8, ¶ 24, Ex. B. at 61. The HAMP

10  TPP also provides that OneWest "will suspend any scheduled foreclosure sale, provided [that Ms.

11  Chancellor] continue[s] to meet the obligations under [the HAMP TPP]" (although "any pending

12  foreclosure action will not be dismissed and may be immediately resumed from the point at which it

13  was suspended if [the HAMP TPP] terminates, and no new notice of default, notice of intent to

14  accelerate, notice of acceleration, or similar notice will be necessary continue the foreclosure action.

15  . . ."). *Id.*, Ex. B at 61.

16      OneWest argues that Ms. Chancellor does not sufficiently allege the HAMP TPP's enforceability

17  because she only attaches two pages of it to her First Amended Complaint. Second Motion, ECF

18  No. 12 at 22. First, OneWest cites no authority for the broad argument that a plaintiff alleging

19  breach of a written contract must "attach" the entire contract to his or her pleading and/or allege the

20  "terms and conditions" of the contract, and the court will not apply such a rule without it. *See Albizo*

21  *v. Wachovia Mortg.*, No. 2:11–cv–02991 KJN, 2012 WL 1413996, at *11 (E.D.Cal. Apr. 20, 2012).

22      Second, while it is true that the entire HAMP TPP is not attached, "the terms of a contract need

23  not be stated in the minutest details." *Lawrence Block Co. v. Palston*, 123 Cal.App.2d 300, 308, 266

24  P.2d 856 (1954), disapproved on other grounds in *Mattei v. Hopper*, 51 Cal.2d 119, 330 P.2d 625

25  (1956). To establish the existence of an enforceable contract, a plaintiff need only show "a meeting

26  of the minds upon the essential features of the agreement." *Lawrence Block Co.*, 123 Cal. App. 2d

27  at 308; *see also Krasley v. Superior Court*, 101 Cal. App. 3d 425, 431 (1980) ("The essence of a

28  contract is the meeting of minds on the essential features of the agreement"). Here, Ms. Chancellor

UNITED STATES DISTRICT COURT
For the Northern District of California

1   attaches the pages of the contract that she has, *see* Opposition, ECF No. 15 at 15 (requesting early

2   discovery to obtain the rest of the contract should the court grant OneWest's motion), those pages

3   required her to make three monthly payments, and she alleges that she performed her obligations.

4   This also is sufficient at this stage of the case.[5]   To the extent Ms. Chancellor's breach of contract

5   claim is based on the HAMP TPP, it survives OneWest's motion to dismiss.

6       The third contract is a Servicer Participation Agreement ("SPA") that OneWest entered into with

7   Fannie Mae in August 2009.  FAC, ECF No. 11 at 19, ¶ 93; *id.*, Ex. G, ECF No. 11 at 84-109.  Ms.

8   Chancellor alleges that OneWest "agreed to apply the [United States] Treasury Department's HAMP

9   criteria to all of the loans it services" and to "suspend all pending foreclosure proceedings until the

10  HAMP analysis is complete for all homeowners." *Id.* at 19, ¶¶ 93-94.  Ms. Chancellor alleges that

11  she is a third party beneficiary of the SPA and can therefore enforce its terms.  *Id.* at 19, ¶¶ 94-95.

12      Third party beneficiaries to a contract can either be intended or incidental beneficiaries, but only

13  intended beneficiaries "gain rights against the promisor." *Hoffman v. Bank of America, N.A.*, No

14  C10-2171 SI, 2010 WL 2635773 (N.D. Cal. June 30, 2010) (citing *Klamath Water Users Protective*

15  *Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999)).  As one district court succinctly explained:

16          One way to distinguish between incidental and intended beneficiaries is whether "the
            beneficiary would be reasonable in relying on the promise as manifesting an intention
17          to confer a right" on the beneficiary.  Restatement (Second) of Contracts, § 302.  The
            requirement of clear intent "is not satisfied by a contract's recitation of interested
18          constituencies, vague hortatory pronouncements, statements of purpose, explicit
            reference to a third party, or even a showing that the contract operates to the third
19          parties' benefits and was entered into with them in mind." *County of Santa Clara [v.
            Astra USA, Inc.,]*, 588 F.3d [1237,] 1244-45 [ (9th Cir. 1999) ]. In the context of
20          government contracts, such as HAMP, there is a presumption that any beneficiaries
            are only incidental beneficiaries.  "Parties that benefit from a government contract are
21          generally assumed to be incidental beneficiaries, and may not enforce the contract
            absent a clear intent to the contrary." *Klamath Water Users Protective Ass'n v.
22          Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999).

23  *Hammonds v. Aurora Loan Services LLC*, No. EDCV 10-1025 AG (OPx), 2010 WL 3859069, at *3

24  _____

25      [5] To the extent that OneWest argues that Ms. Chancellor fails to allege the existence of the
    HAMP TPP, the court disagrees.  The second of the two pages that Ms. Chancellor attaches is a
26  signature page containing the signatures of a OneWest executive and Ms. Chancellor.  FAC, Ex. B.,
    ECF No. 11 at 62.  Moreover, the first of the two pages she attaches contains provisions obligating
27  her to make the three monthly payments during the trial period and to obtain credit counseling upon
    the lender's request, so the HAMP TPP appears to be supported by consideration.  This is sufficient
28  at this stage in the case.

C 12-01068 LB
ORDER

1   (C.D. Cal. Sep. 27, 2010).

2   Nearly all of the courts considering whether borrowers are intended beneficiaries of HAMP

3   contracts like the SPA at issue here have determined that they are not.[6] *See Hoffman v. Bank of*

4   *America, N.A.*, No C10-2171 SI, 2010 WL 2635773, at *3 (N.D. Cal. June 30, 2010) (collecting

5   cases).  Indeed, "[a]s many courts have recognized, it would be unreasonable for a qualified

6   borrower seeking a loan modification to rely on the HAMP servicer's agreement as granting him

7   enforceable rights since the agreement does not actually require that the servicer modify all eligible

8   loans, nor does any of the other language of the contract demonstrate that the borrowers are intended

9   beneficiaries." *Hoffman*, No C10-2171 SI, 2010 WL 2635773, at *4.  Thus, because Ms. Chancellor

10  is not an intended beneficiaries of the SPA, she cannot rely upon it for a breach of contract claim.

11  Her breach of contract claim is dismissed with prejudice to the extent it is based on the SPA.

12      3.  Breach of the Covenant of Good Faith and Fair Dealing

13  In her fifth causes of action, Ms. Chancellor bring a claims against Defendants for breach of the

14  covenant of good faith and fair dealing.  FAC, ECF No. 11 at 22-24, ¶¶ 112-25.

15  The covenant of good faith and fair dealing is implied in every contract and prevents one party

16  from "unfairly frustrating the other party's right to receive the benefits" of the contract.  *See, e.g.*,

17  *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349 (2000).  To allege a claim for breach of the covenant

18  of good faith and fair dealing, a plaintiff must allege the following elements: (1) the plaintiff and the

19  defendant entered into a contract; (2) the plaintiff did all or substantially all of the things that the

20  contract require him to do or that he was excused from having to do; (3) all conditions required for

21

22      [6] Ms. Chancellor cites one case in which the court found that borrowers are intended
    beneficiaries under HAMP.  *See Marques v. Wells Fargo Home Mortg.*, No. 09-cv-1985-L (RBB),
23  2010 WL 3212131 (S.D.Cal. Aug. 12, 2010).  This decision is in the clear minority, and other courts
    within this district have declined to follow it.  *See Ansanelli v. JP Morgan Chase Bank, N.A.*, No. C
24  10–03892 WHA, 2011 WL 1134451, at *6 (N.D. Cal. Mar. 28, 2011) ("One such decision in the
    face of many others to the contrary is not persuasive, especially because *Marques*'s analysis of the
25  third-party beneficiary issue was dicta, as the court eventually held that plaintiff had failed to put
    forth sufficient factual allegations to state a breach of contract claim and therefore dismissed the
26  same."); *Orcilla v. Bank of America, N.A.*, No. C10-03931 HRL, 2010 WL 5211507, at *3 n.2 (N.D.
    Cal. Dec.16, 2010) ("While the court in [*Marques*] laid out a reasoned decision in denying a motion
27  dismiss, this Court nevertheless disagrees with its conclusion as to the plaintiffs' status as an
    intended beneficiary.").  This court also declines to do so.
28

UNITED STATES DISTRICT COURT
For the Northern District of California

1   the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's

2   right to receive the benefits of the contract; and (5) the defendant's conduct harmed the plaintiff.

3   *See* Judicial Counsel of California Civil Jury Instructions § 325 (2011); *see also Oculus Innovative*

4   *Sciences, Inc. v. Nofil Corp.*, No. C 06-01686 SI, 2007 WL 2600746, at *4 (N.D. Cal. Sept. 10,

5   2007).[7]

6       Ms. Chancellor's claim fails because it does not specify which contract it is based on.  In her

7   First Amended Complaint, she alleges that "[t]he terms of the Loan imposed upon Defendants a duty

8   a good faith and fair dealing in this matter," and that Defendants breached it "when Defendants did

9   not provide [her with] a permanent loan modification under HAMP, and then refused to accept

10  mortgage payments from [her] in attempt to force [her] property into foreclosure."  FAC, ECF No.

11  11 at 22-23, ¶¶ 114, 116.  But she does not define "the Loan."  *See id*. at 6, ¶ 16 (first use of "the

12  Loan").  It appears that she uses it to refer to the mortgage she entered into with IndyMac in 2007,

13  but if that is the case, she does not allege that it requires anyone to permanently modify her loan.

14  But if she means to refer to some later agreement, such as the alleged oral agreement, the HAMP

15  TPP, or something else, her allegation is unclear and insufficient.  In such a circumstance, her claim

16  for breach of the implied covenant of good faith and fair dealing is dismissed without prejudice.

17      4.  Negligence

18      In her eighth cause of action, Ms. Chancellor alleges that Defendants were negligent because

19  they "owed a general duty of care to [her] in handling [her] loan in such a way to prevent foreclosure

20  and forfeiture of [her] property" and that they "breached their duty . . . by failing to do the following

21  acts: (2) to comply with state consumer protection laws; (2) to properly service the loan; and (3) to

22  use consistent methods to determine modification approvals."  FAC, ECF No. 11 at 31-32, ¶¶ 164,

23  172.

24  _____

25      [7] California law does not generally provide a tort remedy for breach of the implied covenant
    of good faith and fair dealing in ordinary situations where the parties are a lender and a borrower.
26  *See Dubin v. BAC Home Loans Servicing*, No. C-10-05065 EDL, 2011 WL 794995, at *7-*8 (N.D.
    Cal. Mar. 1, 2011) (collecting cases).  Unless Ms. Chancellor can plead enough facts to permit the
27  court to draw a reasonable inference that her relationship with Defendants had similar fiduciary
    characteristics to that of an insured and an insurer, a tort remedy is unavailable.  *See Mitsui Mfr.*
28  *Bank v. Superior Ct.*, 212 Cal. App. 3d 726, 730 (1989).

The elements of a negligence cause of action are (1) the existence of a duty to exercise due care, (2) breach of that duty, (3) causation, and (4) damages.  *See Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 500 (2001).  Under California law, as OneWest points out, lenders do not owe borrowers a duty of care unless their involvement in the loan transaction exceeds the scope of their "conventional role as a mere lender of money."  *See Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095–96 (1991) (citations omitted).  To determine whether the institution exceeded the scope of its conventional role as a lender of money, courts must balance the following factors:

> [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.

*Id.* at 1098.

Ms. Chancellor cites *Garcia v. Ocwen Loan Servicing, LLC*, 2010 WL 1881098, at *2-3 (N.D. Cal. May 10, 2010), to support her argument that she has alleged sufficient facts to show that OneWest exceeded its "conventional role as a lender."  In *Garcia*, the borrower plaintiff applied to the lender defendant for loan modification.  *Id.* at *1.  On at least two occasions prior to the sale of the home, the defendant had cancelled the trustee's sale to allow time for processing the plaintiff's application.  *Id.*  The defendant asked the plaintiff to submit various documents in connection with the loan modification request.  *Id.*  The plaintiff did so, but upon receiving the documents, the defendant routed them to the wrong department.  *Id.*  Later, the plaintiff's agent received a recorded message indicating documents were missing, but the message did not identify which ones were missing.  *Id.* at *2.  For the next several weeks, the plaintiff's agent repeatedly tried to contact the defendant to determine which documents were missing, but he was unable to speak with any of the defendant's employees.  *Id.*  The plaintiff's agent was finally able to actually speak with one of the defendant's employees, but it was too late.  *Id.*  The employee informed the plaintiff's agent that the home had been sold at a trustee's sale the day before.  *Id.*

The court concluded that at least five of the six factors cited above weighed in favor of finding that the defendant owed the plaintiff a duty of care in processing the plaintiff's loan modification application.  *Id.* at *3-4.  It explained that:

19

The transaction was unquestionably intended to affect Plaintiff. The decision on Plaintiff's loan modification application would determine whether or not he could keep his home.

The potential harm to Plaintiff from mishandling the application processing was readily foreseeable: the loss of an opportunity to keep his home was the inevitable outcome. Although there was no guarantee the modification would be granted had the loan been properly processed, the mishandling of the documents deprived Plaintiff of the possibility of obtaining the requested relief.

The injury to Plaintiff is certain, in that he lost the opportunity of obtaining a loan modification and application his home was sold.

There is a close connection between Defendant's conduct and any injury actually suffered, because, to the extent Plaintiff otherwise qualified and would have been granted a modification, Defendant's conduct in misdirecting the papers submitted by Plaintiff directly precluded the loan modification application from being timely processed.

The existence of a public policy of preventing future harm to home loan borrowers is shown by recent actions taken by both the state and federal government to help homeowners caught in the home foreclosure crisis. *See, e.g.*, CAL.CIV.CODE § 2923.6 (encouraging lenders to offer loan modifications to borrowers in appropriate circumstances); *see also* Press Release at http:// gov.ca.gov/press-release/14871 ("Gov. Schwarzenegger Signs Legislation to Provide Greater Assistance to California Homeowners"), and MakingHomeAffordable.gov (describing the federal "Making Home Affordable Program").

Whether or not moral blame attaches to this Defendant's specific conduct is not clear at this stage of the proceedings. [Footnote omitted.] However, in light of the other factors weighing in favor of finding a duty of care, the uncertainty regarding this factor is insufficient to tip the balance away from the finding of a duty of care.

*Id.* at *3.

While the facts alleged in this case perhaps are not as egregious as those alleged in *Garcia*, the court still finds that Ms. Chancellor has sufficiently alleged her claim. The HAMP TPP was intended to affect her, and the failure to receive a loan modification was virtually certain to result in the foreclosure of her home. In addition, the same public policy considerations cited in *Garcia* apply here as well. Notably, OneWest failed to file a reply, and so it did not attempt to distinguish Garcia or otherwise respond to Ms. Chancellor's argument it was not merely acting in its "conventional role." On these facts, then, Ms. Chancellor's claim for negligence survives OneWest's motion to dismiss.

### 5. Negligent and Intentional Misrepresentation

In her ninth and tenth causes of action, Ms. Chancellor alleges claims against Defendants for

intentional and negligent misrepresentation.  FAC, ECF No. 11 at 33-37, ¶¶ 181-201.

Under California law, "[t]he elements of intentional misrepresentation, or actual fraud, are: '(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage.'" *Anderson v. Deloitte & Touche*, 56 Cal. App. 4th 1468, 1474 (1997) quoting *Molko v. Holy Spirit Ass'n.*, 46 Cal.3d 1092, 1108 (1988).  "The general rule for liability for non-disclosure is that even if material facts are known to one party and not the other, failure to disclose those facts is not actionable fraud unless there is some fiduciary or confidential relationship giving rise to a duty to disclose." *La Jolla Village Homeowners' Ass'n. v. Superior Court*, 212 Cal.App.3d 1131, 1151 (1989) (disapproved on other grounds by *Jimenez v. Superior Court*, 29 Cal. 4th 473, 479–80 (2002)).

Under Federal Rule of Civil Procedure 9(b), a party alleging fraud or intentional misrepresentation must satisfy a heightened pleading standard by stating with particularity the circumstances constituting fraud.  Fed. R. Civ. P. 9(b).  Specifically, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).  Further, "a plaintiff must set forth more than the neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.*  (quoting *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (superceded by statute on other grounds)).  A plaintiff must also differentiate his allegations when suing more than one defendant, especially in the context of fraud claims. *See Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011).

And to state a claim for negligent misrepresentation, a plaintiff must allege the following: "1) a representation as to a material fact; 2) that the representation is untrue; 3) that the defendant made the representation without a reasonable ground for believing it true; 4) an intent to induce reliance; 5) justifiable reliance by the plaintiff who does not know that the representation is false; and, 6) damage." *Bear Stearns & Co. v. Daisy Sys. Corp.*, 97 F.3d 1171, 1180 (9th Cir. 1996) (citing *Masters v. San Bernardino County Employees Retirement Ass'n*, 32 Cal. App. 4th 30, 40 n.6

UNITED STATES DISTRICT COURT
For the Northern District of California

1    (1995)).   As with intentional misrepresentation, the existence of a duty of care is necessary to

2    support a negligent misrepresentation claim.  *Alfus v. Pyramid Tech. Corp.*, 745 F. Supp. 1511, 1523

3    (N.D. Cal. 1990) ("Liability for negligent misrepresentation may attach only where plaintiff

4    establishes that defendants breached a duty owed to him"); *Garcia v. Superior Court*, 50 Cal. 3d

5    728, 735 (1990).

6         The Ninth Circuit has not yet decided whether Rule 9(b)'s heightened pleading standard applies

7    to a claim for negligent misrepresentation, but most district courts in California hold that it does.

8    *See*, *e.g.*, *Errico v. Pac. Capital Bank, N.A.*, 753 F. Supp. 2d 1034, 1049 (N.D. Cal. 2010)

9    ("[N]egligent misrepresentation 'sounds in fraud' and is subject to Rule 9(b)'s heightened pleading

10   standard . . . ."); *In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1176 (S.D. Cal. 2010);

11   *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003); *but see Petersen*

12   *v. Allstate Indem. Co.*, 2012 U.S. Dist. LEXIS 32968, *8–9 (C.D. Cal. Mar. 12, 2012) (finding that

13   Rule 9(b) does not apply to negligent misrepresentation claims; criticizing *Neilson*).  This court, too,

14   finds that it does.

15        Ms. Chancellor's claims fail.  First, she appears to base her claims on the HAMP TPP's

16   provision that states that OneWest would suspend foreclosure proceedings as long as she complied

17   with the HAMP TPP's terms.  *See* FAC, Ex. B, ECF No. 11 at 61.  On its own, this does not suffice

18   to allege intentional or negligent misrepresentation.  If it did, every breach of contract claim would

19   also be a claim for misrepresentation.  Second, her breach-of-contract-style allegation is insufficient

20   on its own, because she also fails to allege scienter, which she must do for her intentional

21   misrepresentation claim, or that a statement was made without a reasonable ground for believing it

22   true, which she must do for her negligent misrepresentation claim.  Nowhere does she allege that

23   OneWest knew or should have known at the time the HAMP TPP was entered into that it would

24   foreclose upon her home.  Third, to extent that she bases her claims on the allegation that "she was

25   told by representatives of ONEWEST that Defendants would not initiate any foreclosure proceeding

26   unless [she] defaulted under the terms of the [HAMP TPP]," her claims fail because the allegation

27   does not meet the heightened pleading standard under Rule 9(b).  She does not allege when such

28   statement occurred, who said it, or in what context it was said.

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Accordingly, Ms. Chancellor's claims for intentional and negligent misrepresentation are

2    dismissed without prejudice.

3    6.  Unfair Competition

4    In her sixth cause of action, Ms. Chancellor alleges that Defendants violated California's Unfair

5    Competition Law, Cal. Bus. & Prof. Code § 17200.  FAC, ECF No. 11 at 24-28, ¶¶ 126-145.

6    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. &

7    Prof. Code § 17200.  "Since section 17200 is [written] in the disjunctive, it establishes three separate

8    types of unfair competition.  The statute prohibits practices that are either 'unfair' or 'unlawful,' or

9    'fraudulent.'"  *Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003); *see also Cel-Tech*

10   *Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  To support a

11   claim for a violation of the UCL, a plaintiff cannot simply rely on general common law principles.

12   *Textron Fin. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 118 Cal. App. 4th 1061, 1072 (2004).[8]

13   The UCL incorporates other laws and treats violations of those laws as unlawful business

14   practices independently actionable under state law.  *Chabner v. United Omaha Life Ins. Co.*, 225

15   F.3d 1042, 1048 (9th Cir. 2000).  Violation of almost any federal, state or local law may serve as the

16   basis for a UCL claim.  *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838–39 (1994).  In

17   addition, a business practice may be "unfair or fraudulent in violation of the UCL even if the

18   practice does not violate any law."  *Olszewski v. Scripps Health*, 30 Cal.4th 798, 827 (2003).

19   Ms. Chancellor alleges that Defendants violated the UCL's "unlawful" and "unfair" prongs.  As

20   for her "unlawful" claim, she alleges that the "predicate unlawful business acts and/or practices

21   include, but are not limited to, the following: California Civil Code[] §§ 3333 (Negligence), 2923.5,

22   2923.6, and other statutory and common law in effect."  FAC, ECF No. 11 at 25, ¶ 131.  OneWest

23   challenges her claim only by arguing that it is preempted by the Home Owners Loan Act ("HOLA"),

24   _____

25   ⁸ Any individual who has "has suffered injury in fact and has lost money or property as a
     result of the unfair competition" may initiate suit.  Cal. Bus. & Prof. Code § 17204.  To have

26   standing, a plaintiff must sufficiently allege that (1) he has "lost 'money or property' sufficient to
     constitute an 'injury in fact' under Article III of the Constitution" and (2) there is a "causal

27   connection" between the defendant's alleged UCL violation and the plaintiff's injury in fact.  *See*

28   *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203-04 (9th Cir. 2010) (citations omitted).  OneWest
     does not challenge Ms. Chancellor's claim on this ground.

12 U.S.C. § 1461 *et seq.*  Second Motion, ECF No. 12 at 26-28.  Specifically, OneWest argues that to the extent that Ms. Chancellor's UCL claim is based upon her underlying violations of California Civil Code § 2923.5 (wrongful foreclosure), it is preempted.[9]  As stated above, though, Ms. Chancellor does not allege that a foreclosure sale has occurred.  For that reason, the court has dismissed without prejudice her claim for wrongful foreclosure based on California Civil Code § 2329.5.  For the same reason, the court finds OneWest's preemption argument to be moot.[10]  Thus, Ms. Chancellor's "unlawful" and "unfair" UCL claims survive.[11]

### 7.  "Unfair and Deceptive Business Act Practices"

Ms. Chancellor's seventh cause of action ostensibly is for violation of "Unfair and Deceptive Business Act Practices" ("UDAP").  FAC, ECF No. 11 at 28-30, ¶¶ 146-162.  In actuality, though, her claim is based on Defendants' alleged UCL violation.  *Id.* at 28, ¶ 147.  Indeed, although they are somewhat more robust, her UDAP allegations largely duplicate the allegations she made in

---

[9] HOLA created the Office of Thrift Supervision ("OTS") to administer the statute, and "it provided the OTS with 'plenary authority' to promulgate regulations involving the operation of federal savings associations."  *State Farm Bank v. Reardon,* 539 F.3d 336, 342 (6th Cir. 2008).  Under one of those regulations, 12 C.F.R. § 560.2, OTS makes clear that it "occupies the entire field of lending regulation for federal savings associations," leaving no room for conflicting state laws.  The regulation goes on to provide a non-exhaustive list of types of state laws that are expressly preempted.  *See* 12 C.F.R. § 560.2(b).  One of these types – the only one OneWest contends is relevant here – are state laws regarding "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages."  12 C.F.R. § 560.2(b)(10).

[10] To the extent that OneWest argues that its preemption argument applies to unfair competition claims generally, *see* Second Motion, ECF No. 12 at 27-28, the court is not persuaded.  OneWest conclusorily states that such claims are preempted because "they relate to 'origination,' 'processing,' and 'servicing' of a loan, but it makes no effort whatsoever to explain why Ms. Chancellor's allegations that are not related to her California Civil Code § 2923.5 claim can be characterized in such a way.

[11] Although her negligence or other common law claims cannot be a basis for her "unlawful" claim, *see Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1150 (N.D. Cal. 2010) ("Plaintiffs' negligence and product liability claims may not constitute predicate acts for a UCL claim.") (citing *Hartless v. Clorox Co.*, Civil No. 06CV2705 JAH(CAB), 2007 WL 3245260, at *5 (S.D. Cal. Nov. 2, 2007) (common law claims cannot form the basis for a claim under § 17200)), her RESPA claim, which survives OneWest's motion to dismiss, may, *see Davidson v. Countrywide Home Loans, Inc.*, 2010 WL 2925440, at *8 (S.D. Cal. July 23, 2010).

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   support of her UCL claim.  *Compare id*. at 28-30, ¶¶ 146-162 *with* id. at 24-28, ¶¶ 126-145.  It

2   appears, then, that her UDAP claim is duplicative of her UCL claim.  Thus, the court dismisses it

3   with prejudice.  Should Mr. Chancellor file a Second Amended Complaint, she is directed to allege a

4   single UCL claim, rather than both a UCL and UDAP claim.

5       8.  Preliminary and Permanent Injunctive Relief

6       Ms. Chancellor asserts a "cause of action" for "preliminary and permanent injunction."  As

7   OneWest correctly points out, injunctions are a remedy, not a cause of action.  *See, e.g.*, *Marlin v.*

8   *Aimco Venezia, LLC*, 154 Cal. App. 4th 154, 162 (2007) ("A 'cause of action' must be distinguished

9   from the remedy sought . . . .  [T]he relief is not to be confounded with the cause of action, one not

10  being determinative of the other. An injunction is a remedy, not a cause of action." (citations

11  omitted)); *Roberts v. Los Angeles Cnty. Bar Ass'n*, 105 Cal. App. 4th 604, 618 (2003); *Ayala v. Bank*

12  *of America*, No. 09CV 1946, 2010 WL 1568577, at *4 (S.D. Cal. Apr.16, 2010).  Ms. Chancellor

13  asserts that she does not allege an injunction as a "cause of action," but this is not correct.  See EFC,

14  ECF No. 11 at 37 ("Preliminary and Permanent Injunction" labeled as "Eleventh Cause of Action").

15  The court notes that it is not ruling on whether Ms. Chancellor is entitled to either a preliminary or

16  permanent injunction, only that those requests for relief are not properly asserted as a "cause of

17  action."  Therefore, her "cause of action" for "preliminary and permanent injunction" is dismissed

18  with prejudice.

19      9.  Quiet Title

20      In her twelfth cause of action, Ms. Chancellor brings a claim for quiet title.  FAC, ECF No. 11 at

21  38-39, ¶¶ 207-213.

22      Under California law, a claim for quiet title must be in a verified complaint and include: (1) a

23  description of the property that is the subject of the action, (2) the title of the plaintiff as to which a

24  determination under this chapter is sought and the basis of the title, (3) the adverse claims to the title

25  of the plaintiff against which a determination is sought, (4) the date as of which the determination is

26  sought, and (5) a prayer for the determination of the title of the plaintiff against the adverse claims.

27  *See* Cal. Code Civ. Pro. § 761.020; *Hamilton v. Bank of Blue Valley*, 746 F. Supp. 2d 1160, 1177–78

28  (E.D. Cal. 2010); *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975–76 (N.D. Cal.

2010); *Ferguson v. Avelo Mortg., LLC*, 126 Cal. Rptr. 3d 586, 591 (2011).  A requirement of an action to quiet title is an allegation that plaintiffs "are the rightful owners of the property, i.e., that they have satisfied their obligations under the deed of trust." *Kelley v. Mortgage Elec. Registration Sys.*, 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009).  "Thus, it is dispositive as to this claim that, under California law, a borrower may not assert 'quiet title' against a mortgagee without first paying the outstanding debt on the property." *Rosenfeld*, 732 F. Supp. 2d at 975 (N.D. Cal. 2010) (citing *Miller v. Provost*, 26 Cal. App. 4th 1703, 1707 (1994) ("a mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee") (citation omitted)).

Ms. Chancellor does not allege a valid and viable tender offer.  Her quiet title claim fails for that reason and is dismissed without prejudice.

## V.  CONCLUSION

Based on the foregoing, the court GRANTS IN PART and DENIES IN PART OneWest's motion.  The court dismisses without prejudice Ms. Chancellor's claims for violation of California Civil Code § 2329.5 and for breach of contract to the extent it is based on an oral contract, breach of the covenant of good faith and fair dealing, intentional misrepresentation, negligent misrepresentation, and quiet title.  The court dismisses with prejudice Ms. Chancellor's claims for violation of California Civil Code § 2329.6, UDAP, and for breach of contract to the extent it is based on the OneWest-Fannie Mae SPA.  Ms. Chancellor's RESPA, breach of contract to the extent it is based on the HAMP TPP, negligence, and UCL claims survive.

Ms. Chancellor may file a Second Amended Complaint within 21 days from the date of this order.

This disposes of ECF No. 12.

**IT IS SO ORDERED.**

Dated: May 22, 2012

_____
LAUREL BEELER
United States Magistrate Judge